# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| MORRIS ALVIN GWEH, | ) |
| Movant, | ) |
| v. | ) Case No. CV412-213 |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

## REPORT AND RECOMMENDTION

Morris Alvin Gweh moves for 28 U.S.C. § 2255 relief. Doc. 669.[1] The government moves to dismiss based on Gweh's plea-bargain agreement to waive his direct and collateral appeal rights. Doc. 674.

## I. BACKGROUND

In 2010 Gweh was charged with one count of conspiracy to possess with intent to distribute, and to distribute, controlled substances (100 kilograms of marijuana), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846; one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); and one count of

---

[1] All record citations are to the criminal docket. Pinpoint citations are to the page number the electronic case filing system assigns automatically to the upper right hand corner of each page.

conspiracy to launder money in violation of 18 U.S.C. § 1956(h). Doc. 50. Represented by retained counsel, Richard M. Darden and Dennis A. O'Brien, Gweh pled guilty to the drug conspiracy and to the money laundering conspiracy. Docs. 269, 447; PSI ¶ 5. In his written plea agreement he waived his right to a direct appeal and to collaterally attack his conviction and sentence on *any* ground. Doc. 447. In exchange, the government dismissed the remaining count.

The Probation Office engaged in various calculations under the United States Sentencing Guidelines (U.S.S.G.), including a reduction for Gweh's acceptance of responsibility, but recommended a four-level enhancement because of, *inter alia*, his leadership role in the conspiracy. PSI ¶ 40. Gweh's U.S.S.G. advisory range was 168 to 210 months and he was subjected to a statutory 5-year minimum and 40-year maximum sentence. PSI ¶¶ 89-90. Prior to sentencing, he objected to the four-level enhancement. PSI at 24. Overruling that, the Court sentenced him to a total of 144 months. Doc. 445 at 2; doc. 555 at 22-23. Gweh appealed but the Eleventh Circuit dismissed it upon the government's motion, because he waived his right to appeal. Doc. 594 at

3.

## II. ANALYSIS

Gweh argues that Darden provided him ineffective assistance of counsel during the plea negotiation process by incorrectly advising him that: (a) his sentence could not be enhanced for anything not listed in his plea agreement (Gweh is upset with the PSI's four-level enhancement, which was not in the plea agreement); and (b) he could challenge any enhancement on appeal that was not listed in his plea agreement (i.e., the four-level enhancement). He claims this incorrect advice caused him to unknowingly waive his rights to file a direct appeal and a post-conviction motion. Doc. 681 at 11 (insisting he "did not agree *not* to appeal if any enhancement was applied and that was not listed in the plea agreement, because he pled guilty *under the assumption* that no enhancement would be applied at sentencing, and if any was applied, he could appeal the enhancement.") (emphasis added). Because this "bad advice . . . cause[d] him to waive his right to appeal[,]" Gweh wants his conviction vacated 'so that he may appeal [his] role in the offense enhancement." Doc. 681 at

15.[2]

Gweh's written plea agreement, which benefitted him greatly (resulting in a below-Guidelines sentence) waives his direct and collateral appeal rights:

> Understanding that 18 U.S.C. § 3742 provides for an appeal by a defendant of the sentence under certain circumstances, the defendant as part of this agreement and in consideration for the government's promises hereunder, expressly waives any and all rights conferred by the statute to appeal any sentence imposed that is within the statutory maximums as set out above. The defendant, as part of this agreement and in consideration for the government's promises hereunder, also expressly waives *any and all rights to collateral post-conviction attack of the sentence imposed or the voluntariness, providence, or factual basis of the guilty plea entered pursuant to this agreement*.
>
> Notwithstanding these waivers, the defendant reserves the right to file a direct appeal (but not a collateral attack) of the sentence imposed (but not the voluntariness, providence, or factual basis of the defendant's entry of a guilty plea pursuant to this agreement), in the event the sentencing Court imposes a sentence above the guideline range it finds as a matter of fact and law to be applicable to the defendant and the offenses, whether the upward departure is made pursuant to U.S.S.G. §4A1.3( from criminal history) or U.S.S.G. §5K2.0 (from offense level).
>
> The defendant understands and agrees that all other aspects of these waivers of appeal and collateral attack rights, and all guideline

---

[2] Of course, if his conviction was vacated there would be nothing to appeal. Construing Gweh's *pro se* request liberally, *Sanders v. United States*, 113 F.3d 184, 187 (11th Cir. 1997), he wants a "do-over" appeal (vacate, then reinstate judgment) so he can appeal the four-level enhancement.

findings of fact and law by the sentencing Court, would remain in full force and effect notwithstanding the defendant's appeal of an upward departure.

Doc. 447 at 4-5 (emphasis added). Gweh also affirmed that he understood that upon entry of his guilty plea, that he had no absolute right to withdraw the plea. *Id.* at 7. And, he understood that:

> The U.S. Probation Office will consider all of defendant's conduct related to the offense to which he is pleading, which *may include* conduct related to Counts of the Indictment which were or are to be dismissed or for which the defendant was acquitted, *as well as* the defendant's criminal history, and that these facts may be considered by the Court in determining the defendant's sentence. The defendant understands that the offense level and criminal history category determined by the United States Probation Office and the Court *may differ* from that estimated or projected *by defendant's counsel* or the United States Attorney.

*Id.* at 7-8 (emphasis added).

By his signature on the plea agreement, Gweh explicitly affirmed that he had read and understood the terms of the plea, which accurately set forth his agreement with the government. *Id.* at 13. That agreement includes his acceptance of the risk that his lawyer could be wrong about his projection of what the Probation Office might determine regarding sentence enhancements. "The record reflects," concluded the Eleventh Circuit, "that the district court thoroughly questioned Gweh

5

about the appeal waiver during the Rule 11 proceeding. He answered under oath that he understood it." Doc. 594 at 3.³ The same must be said for the collateral waiver.⁴ At Gweh's guilty plea the Court explained it:

> Q: *You may not say your lawyers were no good*, or the government bribed witnesses to testify against you, or invaded the privacy of your home, or illegal[ly] [tapped] your telephone, or threaten[ed] somebody, or that the judge was no good, and had taken a bribe. All of that is off of the table. Do you understand that?
>
> A: Yes, Your Honor.

---

³ This ruling is now the law of this case. *United States v. Rozier*, 2012 WL 3062176 at * 3 (11th Cir. Jul. 27, 2012) (prior decision affirming defendant's original total sentence -- that his drug and firearms offenses were interdependent -- was now the law of the case barring jurisdiction to hear for challenge to interdependence again; "Because we already decided the interdependence question in an earlier appeal, we may not reconsider it, pursuant to the law-of-the-case doctrine, and Rozier has not identified any reasons why the doctrine should be overcome.").

⁴ Note that a collateral appeal waiver does not *per se* bar § 2255 challenges. In a recent case where the defendant raised an ineffective assistance claim on direct appeal, the Eleventh Circuit refused to reach it because a § 2255 motion is the preferred route for that. But it paused to note the state of its precedent:

> We express no view on what effect, if any, the plea agreement's collateral attack waiver will have in a future § 2255 proceeding. *See Williams v. United States*, 396 F.3d 1340, 1342 n. 2 (11th Cir. 2005) (declining to address whether collateral attack waiver would extend to a claim of ineffective assistance of counsel "in entering or negotiating the plea"); *Patel v. United States*, 252 Fed. Appx. 970, 975 (11th Cir. 2007) (unpublished) (collateral attack waiver did not bar § 2255 challenge to "validity of ... guilty plea").

*United States v. Sierra-Borbolla*, 2012 WL 4711569 at * 1 (11th Cir. Oct. 3, 2012). Upon determination that the defendant understood what he was waiving, district courts have upheld collateral appeal waivers. *See, e.g., Unites States v. Crum*, 2012 WL 5966635 at *3 (S.D. Ala. Nov. 28, 2012); *Hamilton v. United States*, 2012 WL 5931677 at * 2-3 (S.D. Ga. Nov. 26, 2012).

Doc. 556 at 37 (emphasis added).

The Eleventh Circuit determined he understood his *direct* appeal waiver, and that is now the law of this case. *See supra* n. 3. As to his collateral appeal waiver, it is clear that "at the time of the guilty plea," Gweh understood "that the right to federal habeas review exist[ed]" and "that he . . . [gave] up that right as part of his plea bargain." *Allen v. Thomas*, 161 F.3d 667, 670 (11th Cir. 1998.) Again, he was clearly advised in the plea agreement "that the offense level and criminal history category determined by the United States Probation Office and the Court may differ from that estimated or projected by defendant's counsel or the United States Attorney." Doc. 447 at 7-8. Gweh does not now claim that he did not understand that, only that Darden told him otherwise. But *after* Darden supposedly told him that, the Court told him that he could *not*, once he went through with his guilty plea, claim that his lawyers were "no good," and that obviously would include bad advice like assuring him that only plea-agreement listed enhancements could be used against him in sentencing. That waiver was plainly explained to Gweh, and he accepted it and benefited from

7

it.[5]

Gweh's collateral appeal waiver therefore must be enforced. *See Crawford v. United States*, 2012 WL 6621306 at * 2 (11th Cir. Dec. 18, 2012) ("Crawford's postconviction challenge to his sentence is barred by the appeal waiver in his plea agreement. Crawford acknowledged during his change of plea hearing that the waiver would bar him from challenging the miscalculation of his advisory guideline range."). The government's motion to dismiss should therefore be granted.

## III. CONCLUSION

The Court **GRANTS** movant's motion for leave to file a response brief, doc. 680, but his § 2255 motion itself (doc. 669) must be **DENIED**, which means the government's motion to dismiss should be **GRANTED**. Doc. 674. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander*

---

[5] *See United States v. Benitez-Zapata*, 131 F.3d 1444, 1446 (11th Cir. 1997) ("Waiver will be enforced if the government demonstrates either: (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver.")

8

*v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in *forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED**, this 9th day of January, 2013.

_____
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**